## PEOPLE ex rel. LAKE SHORE & M. S. RY. CO. v. CITY OF BUFFALO
### (two cases).

## PEOPLE ex rel. LEHIGH VALLEY RY. CO. v. SAME (two cases).

### (Supreme Court, —— Term, Erie County. November 18, 1907.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—TIME OF.

Buffalo City Charter, § 405, authorizes the city to widen, dredge, and deepen the Buffalo river. Section 408 prohibits the city from contracting for the making of any improvement exceeding $500 until the assessment therefor has been confirmed and delivered to the treasurer. Laws 1902, p. 1361, c. 568, § 1, as amended by Laws 1906, p. 1725, c. 665, authorizes the city of Buffalo to issue bonds to raise money to widen and deepen the Buffalo river as therein specified, and to make provision for payment thereof out of the general fund, and that such fund shall be reimbursed by a local assessment equal to one-half of the amount of the bonds, payable in five equal annual installments. *Held*, that section 408 had no application to the power of the city to issue bonds and levy a local assessment to pay one-half the amount thereof, under Laws 1902, pp. 1361, 1362, c. 568, §§ 1-3, as amended by Laws 1906, p. 1725, c. 665, but that it applied solely to a local assessment for making an improvement under contract, and that in so far as it was claimed that it referred to the power of the city to issue bonds and levy local assessments to reimburse the general fund it must be deemed to have been repealed by Laws 1902, pp. 1361, 1362, c. 568, §§ 1-3, as amended by Laws 1906, p. 1725, c. 665.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1113–1116.]

2. SAME—BENEFIT TO PROPERTY.

An assessment levied under Laws 1902, p. 1362, c. 568, § 3, as amended by Laws 1906, p. 1725, c. 665, providing that certain river improvement bonds shall be paid by the city of Buffalo out of the general fund, and that such fund shall be reimbursed by a local assessment equal to one-half of the amount of the bonds, must take into consideration the character of the properties affected, their improvements and value, and their adapt-

ability for use in connection with the improvement, the probability of deep channel water way to each parcel benefited, etc., and an assessment on the front-foot basis will not be sustained, where the benefits and conditions are not the same.

Certiorari by the people, on the relation of the Lake Shore & Michigan Southern Railway Company against the city of Buffalo to determine the validity of two local assessment rolls of that city to raise money to pay one-half the expense of dredging Buffalo river, and like proceedings by the Lehigh Valley Railway Company. Finding against the rolls.

Hoyt & Spratt, for relator Lake Shore & M. S. Ry. Co.

Kenefick, Cooke, Mitchell & Bass, for relator Lehigh Valley Ry. Co.

L. E. Desbecker, Corp. Counsel (Samuel F. Moran, of counsel), for defendant.

BROWN, J. Section 405 of the charter of the city of Buffalo provides that the city may widen, enlarge, dredge, and deepen the Buffalo river. On September 2, 1902, the common council of the defendant voted that it intended to order the dredging of Buffalo river from Evans Slip to the south line of lot 65 of the Indian reservation, and directed the commissioner of public works of the defendant to advertise for bids for such work. Such bids were received, and on March 30, 1903, the common council directed the commissioner of public works to contract with the lowest bidder. On April 1, 1904, the contract for sections 1 to 5, inclusive, of the work, was executed by the commissioner for and on behalf of the city and the bidder; and on July 9, 1906, a contract for section 6 of the work was executed by the same parties. The work under the first contract was begun in 1904, and under the second contract in 1906, and both contracts were completed, except parts of section 5 and 6, long before the assessment complained of was made. On July 20, 1903, a resolution of the common council was duly approved by the mayor ordering the board of assessors of the city of Buffalo to spread an assessment of $156,653.75, being one-half of the contract for sections 1 to 5, inclusive, upon the real estate benefited by such improvement in proportion to the benefits resulting therefrom, and also ordering the said assessors to spread an assessment of $64,750, being one-half of the contract for section 6, upon the real estate benefited by such improvements in proportion to the benefits resulting thereto.

The board of assessors duly prepared an assessment roll, assessing the sum of $156,653.75 upon all lands abutting on sections 1 to 5, inclusive, and certain lands abutting on the Buffalo river situate to the east of and up the said river from the south line of lot 65 of the Indian reservation, and not abutting on that part of the river in which such improvements had been made, among which last-mentioned lands are the properties of the relators in these proceedings. By such assessment the lands of the relator Lake Shore & Michigan Southern Railway Company were assessed at the sum of $10,375.13, which lands are located about one mile east of, up the river, and distant from the dredging to pay which the assessment was made; and by such assessment the lands of the relator the Lehigh Valley Railway Com-

pany were assessed at the sum of $9,482.31, which lands are located about half a mile east of, up the river, and distant from the dredging to pay which the assessment was made. This assessment roll was completed by the board of assessors in April, 1906, and a notice of such completion and that it would remain on file and on inspection for ten days was duly published as required by law, and within said ten days both the relators appeared before the assessors and objected to their respective assessments upon the ground, among others, that there was no authority of law for making these assessments after the contract to do such work was made, and that the assessment had not been made according to the benefits derived. These objections were of no avail. The board of assessors duly certified to a copy of such assessment roll, filing the same in the office of the city clerk on July 2, 1906, which officer duly gave notice according to law that the same was on file in his office and that objections thereto might be filed with him within ten days. Within said ten days each of the relators duly filed objections in writing, containing, among other things, the same objections made before the board of assessors. On July 16, 1906, the said assessment roll, together with relators' objections thereto, was duly reported to the common council, and on April 1, 1907, said assessment roll was confirmed by said common council and the resolution confirming the same was duly approved by the mayor. Such confirmed roll was duly delivered to the comptroller on April 11, 1907, and within two weeks of the first publication of a notice of its receipt by him these relators sued out the writs of certiorari to determine their validity and regularity.

The assessment roll spreading the sum of $64,750 for one-half of the work on section 6 was likewise prepared by the board of assessors, in which assessment the lands of the relator the Lake Shore & Michigan Southern Railway Company were assessed at the sum of $4,060.06, and the lands of the relator the Lehigh Valley Railway Company at the sum of $3,710.68. In pursuance of notice from such assessors these relators duly appeared before them and objected to such assessment upon the ground, among others, that no assessment could be levied after a contract had been made for such work, and that such assessment was not made according to the benefits derived from such improvements. These objections were overruled, and a properly certified copy of the assessment roll was filed by them in the office of the city clerk on July 2, 1906, and the relator duly filed the same objections to said assessment roll with said clerk, by whom said objections were on July 16, 1906, duly reported to the common council, and thereafter and on February 11, 1907, such assessment roll was duly confirmed by the common council and the resolution confirming the same duly approved by the mayor. Such confirmed roll was duly delivered to the comptroller February 26, 1907, and within two weeks of the first publication of a notice of its receipt by him these relators sued out the writs of certiorari to determine their validity and regularity.

The serious objection urged by the relators to the validity of these assessment rolls is based upon section 408 of the charter of the city of Buffalo, in which it is provided:

"The city shall not enter into a contract with any person for the doing or making of any work or improvement at a price exceeding five hundred dollars until it shall have caused a notice to be published in the official paper, and two other daily papers of the city, twice a week for two weeks, inviting sealed proposals to do the work or make improvement, pursuant to the plan, specification or other proper description of the work or improvement, to be specified in the notice; and shall not enter into a contract for the doing or making of any such work or improvement for a price exceeding five hundred dollars until the assessment therefor has been confirmed, and has been delivered to the treasurer."

It is conceded that this provision applies solely to local assessments, and it is urged to be the sole and only protection that a property owner has to prevent his property being taken to pay a local assessment without due process of law; that it insures an assessment being levied before any contract liability on the part of the city has become fixed, and guarantees that such property owner shall be notified of such assessment and right to be heard by the assessors and common council on the propriety of the improvement being made and the assessment of his property therefor before the city is bound by contract to pay for the work and at a time when the common council is fit and competent to impartially pass upon the property owners' objections freed from and unbiased by the existence of any contract. It is true that by virtue of the quoted provisions of the charter and the scheme of preparing and perfecting local assessment rolls as provided by other provisions of the charter a property owner is afforded an opportunity of being heard by the assessors and common council before any contract is made for an improvement costing more than $500 which is to be paid for by local assessment. It is also true that these relators did not have such an opportunity to be heard before the contracts were let and work completed to pay which these assessments were levied upon their property. It is a constitutional right that requires a notice to be given to persons assessed for either local or general assessments of the fact of such assessment and an opportunity to be heard relative to such assessment before it is final; but no such constitutional right exists requiring notice of a contemplated public improvement that may result in an assessment. Whatever rights these relators may have to be heard upon the necessity or propriety of improving the Buffalo river or making contracts by the city of Buffalo to dredge the same exists merely by virtue of the quoted provision of the charter, which was subject to modification or change by the Legislature. It is urged by the city that chapter 568, p. 1361, of the Laws of 1902 makes such modification and change, either expressly or by implication, as to repeal that section of the charter so far as it applies to these local assessments to pay bonds issued to raise money to discharge expense of dredging the Buffalo river.

By the terms of section 1, c. 568, p. 1361, of the Laws of 1902, it was made lawful for the city of Buffalo to issue its bonds for $350,-000 for the purpose of raising money to defray the expense of doing the work specified in the two contracts made April 1, 1904, and July 9, 1906, above referred to. By section 2 of that act the bonds were to bear interest at the rate of not to exceed 3½ per cent. per annum; the principal to be payable in five equal annual installments from the

·date of issue. They were to be issued from time to time as ordered by the common council, by the mayor and comptroller, and the common council was required to make provision for the payment of the interest and the principal of said bonds as the same would become ·due in the general fund estimates of said city. By section 3 of that .act it is provided that one-half of the amount of such bonds shall be paid by local assessment to be levied in such proportions as the board of assessors shall deem the respective parcels of land benefited by the improvements therein specified. Such assessment to be payable in five equal annual installments in such manner and with interest at the rate prescribed in the charter of the said city, the amount collected upon such local assessment to be annually credited to the re-sources of the city in the annual estimates for the purpose of reimbursing the general fund to the extent of one-half of the outlay in-·curred in paying such bonds.

It is seen that the scheme provided by the statute was that the city should issue its bonds for the entire expense of doing the work of dredging the Buffalo river from Evans Slip to the south line of lot 65 of the Indian reservation. The common council should make provision for payment of annual installments, principal and interest, in the general fund estimates of the city; one-half of such bonds to ·be collected by local assessments on the property benefited, and such one-half, when .collected, to be used to reimburse the general fund for the one-half of such moneys taken from such general fund to ·pay the same. In other words, the bonds were to be paid by the city out of the general fund, and such general fund was to be reimbursed by a local assessment equal to one-half of the amount of such bonds when collected. It is apparent that the bonds could be issued under the statute at any time when ordered by the common ·council, the mayor, and the comptroller, and it necessarily follows that· a local assessment to pay one-half of such bonds and thus reimburse the general fund could be made at once after such bonds were issued. For the purpose of raising money by local assessment ·to reimburse the general fund to the extent of one-half of the moneys used to pay off such bonds, it is entirely immaterial whether the contract to dredge the river was in fact made before or after the assess-·ment. It very clearly appears from the provisions of chapter 568 of the Laws of 1902 that the issuing of the bonds and the spreading ·of these local assessments were designed to be cotemporaneous, if not simultaneous, acts. The statute provides that the bonds shall mature in five equal annual installments after issue; that is, one-·fifth of the amount issued shall mature in one year and one-fifth an-·nually thereafter. The statute also provides that the amount of the local assessments shall be payable in five equal annual installments; that is, one-fifth of the amount of the assessments shall mature in ·one year and one-fifth annually thereafter. It is thus seen that on the maturity of one-fifth of the amount of the bonds there shall be due and available for reimbursing the general fund of the city for ·the payment of that matured indebtedness one-·fifth of the amount of ·the assessments. To produce this result the assessment must of ne-·cessity be spread, made, completed, and confirmed one year before

the maturity of the first installment of the bonds. In other words, the issuing of the bonds and making of assessments are required by statute to be simultaneous acts, and any provision of the charter that would interfere with such procedure, that is antagonistic to such cotemporaneous acts, must be held to be superseded, if not repealed, by this statute.

Under this statute there was abundant authority for the city to issue its bonds and proceed at once to make a local assessment to provide for the payment of one-half thereof. The fact is that the city did, under said statute and its amendment by chapter 665, p. 1725, of the Laws of 1906, issue its bonds for the sum of $450,000, which were sold and the moneys realized therefrom were used to pay for the expense of such improvements. The fact is that the work was completed and paid for before the assessment rolls complained of were confirmed by the common council, and, while it is true that the assessment rolls purport on their face to be assessments for dredging, deepening, widening, improving, and removing obstructions from the Buffalo river, etc., the fact is that these assessment rolls and the local assessments against these relators are for no such purpose whatever. They are, in fact, for the sole and only purpose of raising money by local assessment to reimburse the general fund of the city of Buffalo to the extent of one-half of the moneys used or liable to be used from such fund to pay the bonds. The relator the Lake Shore & Michigan Southern Railway Company so alleges in its petition the actual fact to be. All the parties to this controversy allege that these local assessments are made under the authority of chapter 568 of the Laws of 1902, as amended by chapter 665 of the Laws of 1906. There could not be a local assessment in fact to pay one-half the expense of dredging Buffalo river under chapter 568 of the Laws of 1902. There could be a local assessment, in fact, to pay one-half of the bonds mentioned in that act. The charter provision (section 408) is that the city shall not enter into a contract for doing or making any such work or improvement for a price exceeding $500 until the assessment therefor has been confirmed and has been delivered to the treasurer. This provision has no application whatever to the power of the city to issue bonds and levy a local assessment to pay one-half the amount thereof under chapter 568 of the Laws of 1902. It solely applies to a local assessment for making an improvement under contract, and in so far as it is claimed that it refers to the power of the city to issue bonds to raise money to pay the contract indebtedness of April 1, 1904, and July 9, 1906, and levy local assessments to reimburse the general fund for one-half of the amount of such bonds, it must be deemed to have been repealed by chapter 568 of the Laws of 1902. The relators had no legal right to be heard upon the question as to whether these bonds should be issued and sold and proceeds used to defray the expense of dredging Buffalo river. They did have the constitutional right to be heard upon the subject of levying a local assessment upon their property to pay one-half of these bonds. That right has been secured to them by the provisions of the charter regulating the manner of making such assess-

ment and confirmation of the assessment rolls by the common council. They in fact enjoyed their full constitutional privilege of being heard.

The naming of these assessment rolls, characterizing them as being assessment rolls for the dredging, deepening, widening, improving, and removing obstructions from the Buffalo river, etc., and mailing notices to the relators and other property owners that the assessment rolls had been completed for such a purpose, when the only authority for such local assessment was for the purpose of raising money to reimburse the general fund of the city for one-half of the moneys taken to pay the bonds issued under chapter 568 of Laws of 1902, was an irregularity that can easily be cured by a new assessment, and thus relieve the lawful assessment of relator's property from a very serious difficulty. If the only question to be decided upon this hearing was the legal right to make an assessment and the validity of these rolls upon that ground, I should be inclined to hold that they were valid under the provisions of chapter 568 of Laws of 1902; but, inasmuch as the assessments have not in fact been levied upon the several parcels in proportion to the benefits enjoyed by the properties, and for that reason a new assessment must be levied, the irregularity and defect above specified can also be remedied.

It clearly appears from the evidence that the assessment was levied on the front-foot basis, according to the frontage of the respective parcels on the Buffalo river. The original assessment roll on file in the office of the board of assessors shows on its face that all land above section 4 as far as the Lake Shore bridge was assessed for work on section 4 at the rate of 59 cents per river dock front; all land above section 5 to the same point for work on section 5 at the rate of $2.48 per river dock front; all land above section 6 to the same point for work on section 6 at the rate of $1.20 per river dock front. By this assessment lands of the relator more than a mile from the improvement are made to pay the same rate as the lands immediately adjoining and adjacent to the improvement. The fact that lands a mile up the river from the improvement had no present means and none in prospect of enjoying the same benefits from improvements already made as lands immediately adjoining such improvements is a demonstration that their benefits cannot be the same. While the per foot front rule is not necessarily improper, the courts have ever condemned it where the benefits and conditions are not the same. Undoubtedly the determination of the board of assessors that relators' land has been benefited is correct; but their determination that such lands, vacant and unimproved river frontage, have been benefited to the same degree, the same rate per foot front, as lands a mile or more below, some of them with present dock improvements, within the improved river and adjacent to it, cannot be upheld. If a jury had so decided, their verdict would be set aside as against the weight of the evidence. Section 2140 of the Code makes that the rule governing these proceedings.

A new local assessment must be levied for the purpose of reimbursing the general fund of the city to the extent of one-half of the moneys taken therefrom to pay the bonds issued under chapter 568, p. 1361, Laws 1902, as amended by chapter 665, p. 1725, Laws 1906, which assessment must be levied in such proportion as the board of assessors

shall deem the respective parcels of land benefited by the improvement described in chapter 568 of the Laws of 1902. In making such assessment the assessors will consider the character and condition of the properties affected, their improvements, their value, their adaptability for use in connection with the improvement, the probability, present or remote, of deep-channel water way to each parcel benefited, and such other items that must be considered to make an assessment upon all parcels according to benefits. The common council never having directed the board of assessors to levy a local assessment to reimburse the general fund of the city for one-half of the moneys necessary to pay the bonds issued and actually used in good faith for the purpose defined in chapter 568 of Laws of 1902, it is its duty so to do at once, and thus initiate a proceeding for the purpose of paying such bonds that will be free from the irregularities, etc., herein pointed out. The assessment rolls must be returned to the common council, to annul the same and direct a new local assessment as above specified.

Findings may be prepared accordingly, awarding costs to the relators in each proceeding.