PEOPLE ex rel. LAKE SHORE & M. S. R. CO. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

1. MUNICIPAL CORPORATIONS (§ 445*)—PUBLIC IMPROVEMENTS—LOCAL ASSESSMENTS.

Since Laws 1891, p. 223, c. 105 (Buffalo City Charter) § 408, requires that an assessment must precede a contract for local improvements, the making of a contract in violation of the statute does not affect the validity of the assessment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1065; Dec. Dig. § 445.*]

2. MUNICIPAL CORPORATIONS (§ 512*)—PUBLIC IMPROVEMENTS—LOCAL ASSESSMENTS—VALIDITY—CANCELLATION AND CORRECTION.

Under Laws 1891, p. 153, c. 105 (Buffalo City Charter) § 101, subd. 5, providing for canceling a local assessment for illegality and for correcting it for certain defects, the court may on certiorari direct assessments which are illegal, to be returned to the common council with instructions to annul the same, and make a new assessment upon correct principles.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 512.*]

3. MUNICIPAL CORPORATIONS (§ 340*)—PUBLIC IMPROVEMENTS—LOCAL ASSESSMENTS.

Laws 1891, p. 223, c. 105 (Buffalo City Charter) §§ 404, 405, authorize the city to improve the Buffalo river, and to pay the expenses thereof by local assessments. Section 407, as amended in 1892, provides that an improvement for a price exceeding $500 must be ordered by a vote of two-

---

thirds of the council after publication of notice of intention to make the order, and section 408 forbids the making of a contract for an improvement for a price exceeding $500 until the assessment therefor has been confirmed. Laws.1902, p. 1361, c. 568, § 1, as amended by Laws 1906, p. 1725, c. 665, authorizes the city to issue bonds for a stated sum to defray the expenses of improving the river in the respects therein specified, and by sections 2 and 3 of said act provision is made for ultimately raising the amount by tax and reimbursing the general fund of the city to the extent of one-half of the amount of the bonds by assessing the same upon the property benefited. *Held*, that the provision in section 408 that the assessment must precede the contract does not apply to contracts for improvements specified in Laws 1902, p. 1361, c. 568, § 1, as amended, since the proceeds of the bonds issued under the statute, and not the taxes to pay the same, constitutes the primary fund out of which the work is to be paid.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 340.*]

McLennan, P. J., dissenting.

Appeal from Special Term, Erie County.

Certiorari by the People, on the relation of the Lake Shore & Michigan Southern Railroad Company, against the City of Buffalo to review assessments made in connection with the improvement of the Buffalo river. From a judgment (107 N. Y. Supp. 281) entered upon the decision of the court at Special Term, the relator appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Hoyt & Spratt, for appellant.
Louis E. Desbecker and Samuel T. Moran, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs, except as to the last provision but one, which should be stricken out.

The proceeding was to review one of two assessments made in connection with the improvement of Buffalo river, and to procure them to be vacated and set aside as illegal. The relator's attack was based substantially upon two grounds: First. That they were not made in accordance with the benefits. Second. They were not made until after contracts for the work had been made, the work done, and the improvement substantially completed.

First. The court found for the relator as to the first ground. The city did not appeal, and, of course, the relator does not object to this part of the decision. The form of the judgment based upon this ground we will consider later.

The court found for the city as to the second ground, and the serious contention of the parties relates to this question. By the provisions of the charter the city of Buffalo was given power to improve the Buffalo river within the city, which was declared to be a public highway, and to pay the expense thereof from the general fund or by local assessments as the common council should determine. Sections 404, 405, c. 105, p. 223, Laws 1891, as amended in 1895 and 1900 (Laws 1895, p. 1730, c. 805, § 30; Laws 1900, p. 1302, c. 571, § 1). But

such improvement, the estimated expense of which should exceed $500, could not be ordered, unless by the vote of two-thirds of all the elected members of the common council after publishing in six successive numbers of the official paper of the city the intention to order such improvement. Section 407, as amended in 1892 (Laws 1892, p. 504, c. 246, § 1). And the city could not enter into a contract for making an improvement at a price exceeding $500 until a notice was published inviting proposals, and could not enter into such contract until the assessment therefor had been confirmed, and delivered to the treasurer. Section 408. These provisions related to local improvements, including improvements to Buffalo river, and apparently were designed to afford property owners liable to assessment for the expense of the improvement opportunity to be heard by the common council before any contract could be made, or liability incurred, as to the propriety or necessity of the improvement intended to be made, and, whenever these provisions are applicable, the common council could make no valid contract and incur no legal liability unless the statute was complied with. The effect upon the assessments will be hereafter considered.

In 1902, however, an act was passed by the Legislature, being chapter 568, p. 1361, Laws 1902, which became a law April 11, 1902, and was subsequently amended by chapter 665, p. 1725, Laws 1906, by section 1 of which it was provided that it should be lawful for the city to issue its bonds for the purpose of raising $450,000 to defray the expense of improving Buffalo river in the respects therein specified, so far as the common council should thereafter determine, and by section 2 of which it was provided what the contents of the bonds should be and that one-half should be general fund bonds, and the other one-half local assessment bonds. They should be issued from time to time as common council should direct, and that provision should be made by the common council for the payment of the principal and interest thereon as the same became due in the general fund estimates of the city, and by section 3 of which it was provided that one-half of the bonds should be paid by local assessment, to be levied in such proportion as the board of assessors should deem the respective parcels of land benefited by the improvement, the assessment to be payable in five annual installments, and to be credited to the resources of the city for the purpose of reimbursing the general fund for one-half of the outlay in paying the bonds. Thereafter, and September 12, 1902, the common council adopted a resolution, approved by the mayor, wherein they stated their intention to order the improvement to Buffalo river, in the respects specified in section 1, Acts 1902, p. 1361, c. 568, as amended, and directed the commissioner of public works to advertise for proposals and the city clerk to publish notice of the intention to order such improvement. February 9, 1903, the proposals were received, and March 30, 1903, the common council by resolution approved by the mayor directed one contract to be made with the Buffalo Dredging Company for a large part of the work at a price exceeding $300,000. July 6, 1903, the common council adopted resolutions, which were approved by the mayor, ordering the improve-

ment to be made, and fixing the expense thereof, and directing the assessment of the same in two parts upon the real estate of the city benefited by such improvement in proportion to the benefits resulting thereto.

April 1, 1904, one contract was made for the doing of a portion of the work, and July 9, 1906, another contract was made for the doing of the balance of the work of the improvement; the price of the one being $313,307.50 and of the other $129,500. The contractor undertook and performed the work in accordance with the terms of these contracts. Neither of the assessments for the expense of the improvement had been confirmed or delivered to the treasurer when these contracts were made. Both were made and due notice of their completion given April 6, 1906. They were filed with the city clerk June 30, 1906, and objections were duly filed by the relator to the confirmation thereof. One was confirmed February 25, 1907, and the other April 15, 1907, and both were delivered to the comptroller. The work under one contract was nearly completed when the one assessment was confirmed, and the work under the other contract had been nearly completed at the time of the trial of this case October, 1907. This proceeding was commenced in March, 1907. The city issued its bonds from time to time, and sold them for the purpose of defraying the expense of the improvement, and the moneys realized were expended in complying with the contracts hereinbefore referred to. There is no statement in any of the proceedings of the common council that the assessments were levied or made to defray any issue of bonds pursuant to chapter 568, Laws 1902. The court found as a fact, however, that the common council in directing the assessors to make the assessments, by mistake, directed them to be made for the purpose of defraying the expense of the improvement, instead of directing them to be made for the purpose of reimbursing the general fund for one-half of the bonds under chapter 568, Laws 1902, as amended in 1906.

The common council seems to have followed the provisions of the charter referred to in detail in ordering the improvement to be made and directing the assessments to defray the expenses thereof; but they made the contracts for the work before the assessments were confirmed and delivered to the treasurer. If the improvement was one governed by section 408 of the charter, then no valid contracts could be made before such confirmation and delivery to the treasurer. The only question is whether by reason of chapter 568, Laws 1902, amended in 1906, section 408 of the charter was rendered inapplicable to this improvement. This act conferred no power upon the city to make the improvement. It had power to do that under the charter. This act was passed merely to enable the city to issue bonds in a form, which was not permitted under the charter (sections 105–405). The act provided bonds might be issued to a certain amount, making the principal payable in five annual installments, and the interest semiannually, and that assessments should be made for the one-half thereof, payable also in five annual installments. Though in form the assessments were to pay the bonds, the bonds were given for the expense of the

improvement, so that it amounted to the same thing. The assessments were really in effect to, defray the expense of making the improvement. I see no reason why the making of the contracts in view of the act (chapter 658) of 1902, amended in 1906, might not have been delayed until the assessments were made and filed with the treasurer. The assessments were not to be made annually. They were to be single ones for the whole five years, but payable in annual installments to meet the bonds as they became due in annual installments. When the proposals came in, the common council could determine the amount necessary to be raised, the same as in any other local improvement, and could direct the assessments to be made and wait until they were confirmed and delivered to the treasurer before making the contracts. It seems to me the Legislature had in mind the provisions of the charter in passing the act (chapter 568, Laws 1902), and its amendment in 1906, and were careful not to interfere therewith.

While the trial court seemed to be of the opinion that the act (chapter 568, Laws 1902), as amended in 1906, repealed so far as this improvement was concerned the provisions of section 408 of the charter, counsel for the city makes no such claim here, but merely contends that the act rendered the provisions of section 408 of the charter inapplicable to this improvement. Well, this is rather a distinction without a difference. My judgment is that there is no conflict between the statutes at all, that both can stand, and that the provision in the charter postponing the making of the contracts until the assessments had been made and delivered to the treasurer should have been complied with, and, not having been, the contracts were illegal and invalid. I had supposed that, this conclusion being reached, the additional one necessarily followed, that the assessments were also invalid. I had thought of the assessments as made for the purpose of paying for the work under the contract, but really the assessments under the statute were made to defray the expense of the improvement, and in this case to pay bonds issued to raise such money. There is nothing in the statute requiring assessments to be based upon contracts already made. In fact, they could not be so based under the statute, because, as I have concluded, contracts could not be made until after the assessments were confirmed and delivered to the treasurer. The charter (section 408) makes no provision as to the time the assessments shall be made. It merely prohibits the making of contracts before the assessments. These assessments appear to have been made, confirmed, and delivered to the comptroller in time and in all respects as required by the charter.

They were to be held by the comptroller under section 93 for two weeks, and then to be delivered to the treasurer, unless in the meantime certiorari proceedings or an action to review the assessments were begun, and notice thereof given him, in which case he was to hold the assessments for two additional weeks, and after such time deliver them to the treasurer, unless they shall be directed returned to the common council or proceedings to collect or enforce the same should be stayed by the court. These assessments were, so far as the record shows, not delivered to the treasurer until the commencement

and trial of this proceeding. The whole proceedings with reference to the assessments appear to have been taken according to the charter, and I see no reason why they were not legal and valid except under the first ground of objection made thereto. The fact that the common council violated the statute by making illegal contracts could not affect the validity of the assessments under the statute. Some remedy might be found to prevent the moneys raised by the assessment from being improperly used to pay the contractors for work under illegal contracts, but that would not involve the invalidating of the assessments. See Bork v. City of Buffalo, 50 Hun, 601, 2 N. Y. Supp. 559, where this rule seems to have been applied at the General Term. The case was reversed upon another ground by the Court of Appeals in 127 N. Y. 64, 27 N. E. 355, but the court seems not to have passed upon this question.

We are not prepared to hold, as claimed by the city, that, upon the assessments being made, confirmed, and delivered to the treasurer, the contracts theretofore made would become valid and subsisting contracts, though invalid and illegal before that time. It is, of course, a peculiar condition of things, the contracts having been made, the bonds issued and sold, and the money paid on the contracts, which are invalid, and yet the assessment held valid, but I think it must be so held. I am not willing to agree that the provisions of section 408 were properly disregarded in making these contracts.

· Third. I assume the relief granted, based upon the two findings above referred to, was correct. The judgment directs the assessments to be returned to the common council with instructions to annul the same, and then adjudges that the assessment be vacated, and a new assessment made, subdivision 5 of section 101 of the charter provides for canceling an assessment for illegality, and for correcting it for certain defects or irregularities. These provisions were the subject of discussion in People ex rel. v. City of Buffalo, 147 N. Y. 675–682, 42 N. E. 344, and it was then concluded that for such an error as the one here involved the court might annul the whole assessment or send it back for a new assessment of the relator's land. Apparently the relief here granted was based upon that case.

I do not agree, however, to the principle of law embodied in the judgment, that the contract might properly and legally be made before the assessments were made, confirmed, and delivered to the treasurer.

SPRING, KRUSE, and ROBSON, JJ., vote for affirmance of the entire judgment on memorandum by KRUSE, J. McLENNAN, P. J., dissents.

KRUSE, J. (concurring specially). I agree in affirming that part of the judgment which establishes the jurisdiction of the assessors to make the assessment, and directs a reassessment upon the principles laid down in the judgment.

Furthermore, I am of the opinion that the remaining part of the judgment appealed from, which declares the contracts to be valid, should also be affirmed. I think the provisions of section 408 of the

city charter, which provides that the city shall not enter into a contract for an improvement for a price exceeding $500 until the assessment therefor has been confirmed and delivered to the treasurer, does not apply to these contracts, for the reason that provision is made by the statute relating to the improvement for raising the money by issuing bonds, and not directly by taxes. The mere fact that provision is made for ultimately raising the amount by tax, and reimbursing the general fund of the city to the extent of one-half of the amount of the bonds by assessing the same upon the property benefited, does not, as it seems to me, bring the contracts for doing this work within the provision forbidding the making of a contract until the assessment has been confirmed. The proceeds of the bonds, and not the taxes to pay the same, constitutes the primary fund out of which the work of making the improvement is to be paid. I think it was not contemplated that a tax levy should precede the making of every contract in making the improvement.

---

(129 App. Div. 858.)

### VROOM v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

1. MASTER AND SERVANT (§ 265*)—EXISTENCE OF RELATION—RAILROAD EMPLOYÉ TRAVELING ON PASS—PRESUMPTIONS.

    Where a railroad brakeman on a construction train is employed at some distance from his home, and is given a pass to use in going home on Saturdays and returning to his work on Sundays, it will be presumed that the pass was limited to use by him in going home and back to work, and that it was a part of the contract of employment, and that he used it as an employé.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 180*)—FELLOW SERVANTS—CONSTITUTIONALITY OF LAW.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

    McLennan, P. J., and Williams, J., dissenting.

Appeal from Trial Term, Erie County.